IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK TOOMER, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-12-0083 |
| BCDC, et al., | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Derrick Toomer ("Toomer") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants Wendell France, Gwendolyn Oliver, Michael Fernandez, James Willies and Bolay Ayeni, by their attorneys have filed Motions to Dismiss of for Summary Judgment. ECF Nos. 24 & 56. Plaintiff has responded. ECF Nos.31, 32, 33, 34, 40, 41, 43, 54, 55, 58, 64, 65 & 66.[1] After review of the papers, and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' Motions to Dismiss or for Summary Judgment will be GRANTED.

### Background

Toomer, a former detainee at the Baltimore City Detention Center, filed the instant Complaint alleging that on April 31-May 1, 2011, Defendant Willis let an inmate out of his cell onto Plaintiff's tier and into his cell. Plaintiff, who was housed on protective custody, was stabbed by the inmate while he slept. He states that Willis then took the inmate back to his cell.

---

[1] Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 64) shall be denied to the extent it raises new claims regarding denial of medical care. Plaintiff is free to file a new civil rights complaint if he believes he was denied adequate medical care, naming the appropriate medical Defendants and setting forth the particulars of those claims. To the extent the Motion to Amend is responsive to Defendants' dispositive motions it has been considered by the court.

Plaintiff states that at the time of the incident BCDC was on lock down. He further states that as a result of the attack he has undergone reconstructive surgery and sees a specialist regarding continued problems with his hand. ECF No. 1.

In his supplemental complaint, Plaintiff states that institutional policies led to the attack upon him. He states that two attacks in May and September, 2009, violated his Eight Amendment rights "due to negligent failure to provide overall security in jail population." He further claims that Defendants had advance knowledge of the risk other prisoners posed to him and a major security lapse was not corrected by Defendants. ECF No. 7.

**Standard of Review**

A.     Motion To Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id*. 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.   Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

4

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

The court must first examine Defendants' assertion that the case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action

5

shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

BCDC provides a four step grievance process. ECF Nos. 24 & 56, Ex. A. The detainee is to file a complaint within 15 calendar days of the incident on a Resident Complaint Form. The Resident Grievance Office has 20 days in which to respond. Step II of the process provides that the detainee may file a Motion for Grievance Committee. Step III allows for a Motion to Appeal to Warden to be filed within 3 days of the decision rendered in Step II. Step IV directs the detainee to file a Motion for Appeal to the Assistant Commissioner within 3 days of the receipt of the Step III decision. *Id*.

On May 13, 2010, Plaintiff filed a grievance against staff indicating that on April 30, 2010, C.O. Willis allowed an inmate to attack him inside his cell. On May 19, 2010, the grievance was dismissed because Plaintiff failed to file the proper form. Plaintiff was directed to fill out the proper form and resubmit the grievance. *Id*. Plaintiff states that he was moved from BCDC to MCAC on May 23, 2010. He states that since it took BCDC 6 days to act on his grievance a "reasonable fact finder" could find it took 6 days to deliver the response to him and at that point he was no longer housed at BCDC. He states he did not receive the directive to resubmit the grievance. ECF Nos. 31, 32, 43, 54, 55, 65 & 66.

On July 26, 2010, Plaintiff submitted a second grievance complaining of the April 30, 2010 assault and requested the incident reports relative to the assault. On August 2, 2010, Plaintiff was advised that the request for the incident reports would need to be directed to the warden and that his grievance had been addressed by the Department and Security Supervisor and the matter referred to law enforcement authorities. ECF No. 24, Ex. A. Plaintiff was further advised that if he was not satisfied with the response he could submit a Step III grievance

within 10 days.[2] Plaintiff filed nothing further regarding the April 30 attack. *Id*.

Plaintiff acknowledges that he received a response to his July 26, 2010 letter but indicates that since his attackers were prosecuted he did not believe he needed to pursue any additional remedies. He also states that nobody forwarded or advised him of the appropriate forms to move forward with his grievance. Additionally, Plaintiff states that BCDC does not provide any detainee intake orientation or inmate handbook and therefore he was unaware of the grievance process. Lastly, Plaintiff indicates that he believed that since his attorney had contacted State Treasurer Nancy Kopp, Department of Public Safety and Correctional Services Secretary Maynard, and the Inmate Grievance Office on his behalf, he had taken all steps necessary to exhaust his grievance. He further notes that no one directed his attorney to the proper grievance process. ECF Nos. 31, 32, 43, 54, 55, 65 & 66.

There is no record that Plaintiff even initiated the grievance process regarding the September 19, 2009 attack or his claim that he was denied adequate medical care by correctional employees. *Id*. Plaintiff has offered no explanation other than his ignorance of the grievance process to explain why he failed to institute the grievance process as to these claims.

The Fourth Circuit has held that, "[b]ecause the PLRA does not define ["available"], courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir.2008). Plaintiff contends that the ARP was not available to him because he was unaware of the process. While it is true that Defendants must plead and prove plaintiff's failure to exhaust, *Anderson v. XYZ*

---

[2] The typical time for filing a Step III grievance is 3 days but given that Plaintiff was no longer housed at BCDC he was given additional time to pursue his grievance. *Id*.

*Correctional Health Servs.,* 407 F.3d 674, 676 (4th Cir.2005), courts have also recognized that, where the existence of a grievance procedure covering the inmate plaintiff is established, the burden to show that such procedure was actually unavailable rests with the plaintiff. *See, e.g., Graham v. Gentry,* 413 F. App'x 660, 663 (4th Cir.2011) ("in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."). Defendants have shown that a procedure existed and that Plaintiff did not utilize it. Thus, in order to survive Defendants' dispositive motion, Plaintiff must at least plausibly allege that the existing procedure was not available to him because facility administrators prevented him from using it. Plaintiff has failed to do so.

Moreover, ignorance of the grievance process due to administrators' purported failures as an excuse to a Plaintiff's failure to exhaust has been rejected by several courts, including courts in this District. *See, e.g., Napier v. Laurel County, Kentucky,* 636 F.3d 218, 221–22 (6th Cir.2011) (rejecting inmate-plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); *id.* at n. 2 ("A plaintiff's failure to exhaust cannot be excused by ignorance of the law or the grievance policy.") *Twitty v. McCoskey,* 226 F. App'x 594, 596 (7th Cir.2007) ("prisoner's lack of awareness of a grievance procedure ... does not excuse compliance") (unpublished decision); *Graham v. County of Gloucester, Virginia,* 668 F.Supp.2d 734, 741 (E.D.Va.2009) ("a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies.").

The record evidence demonstrates that Plaintiff did not initiate the administrative remedy process as to the September, 2009 attack or his claim of denial of medical care and that he failed to exhaust his administrative remedies as to the May attack. While Plaintiff's claims that he was unaware of the process, was moved between facilities, and had an attorney looking into the matter, illuminate an understandable and regrettable confusion on Plaintiff's part, they do not support any contention that Defendants "prevented" Plaintiff from availing himself of the ARP such that it was made unavailable to him. It simply does not follow that Plaintiff was prevented from filing and completing the grievance process concerning his claims. Plaintiff clearly has failed to exhaust available administrative remedies and his complaint is subject to dismissal.

For the aforementioned reasons, the Defendants' Motions, construed as motions for summary judgment, shall be granted. A separate Order follows.


Date:   February 26, 2013                              /s/
                                             DEBORAH K. CHASANOW
                                             United States District Judge