IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK TOOMER

    v.

BCDC, et al.

:    Civil Action No. DKC 12-0083

**MEMORANDUM OPINION**

On January 6, 2012, Plaintiff Derrick Toomer filed a complaint alleging prisoner civil rights violations pursuant to 42 U.S.C. § 1983. Defendants subsequently moved to dismiss or for summary judgment (ECF Nos. 24 & 56). The undersigned issued a memorandum opinion and order granting summary judgment on all of Plaintiff's claims for failure to exhaust his administrative remedies. Plaintiff appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed in part, vacated in part, and remanded to allow consideration of Defendants' alternative grounds for seeking dismissal or summary judgment and any further proceedings that may be appropriate. (ECF No. 76-1). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to dismiss or for summary judgment filed by Defendants France, Fernandez,

and Oliver will be granted.   The motion to dismiss or for summary judgment filed by Defendant Willies will be denied.

I.   **Background**

A.   **Factual Background**

Plaintiff Derrick Toomer is a former pre-trial detainee at the Baltimore City Detention Center ("BCDC"), who was attacked by another inmate at BCDC while he was housed in protective custody in April 2010.[1]   According to Plaintiff, in March 2009, his son was involved in a jail house murder of an affiliate of the Black Guerrilla Family ("BGF") gang.   (ECF No. 33, at 1). Plaintiff alleges that, consequently, he was assaulted by other inmates in 2009 and later housed in protective custody at BCDC. Plaintiff asserts that on April 30, 2010, while BCDC was on lock down, Defendant James Willies, a correctional officer at BCDC, allowed an inmate - later identified as Todd Holloway - out of his cell onto Plaintiff's tier and into his cell, where he was sleeping.   (ECF No. 7, at 5).   Plaintiff avers that he was stabbed in his face, hand, and arm, and that Officer Willies subsequently escorted the attacker off Plaintiff's tier, back onto his own tier and into his cell.   (*Id.*).   Plaintiff alleges that BGF orchestrated the attack in retaliation for his son's

---

[1] Plaintiff is no longer housed at BCDC.   Since filing this action, he has been convicted and is now incarcerated at the North Branch Correctional Institution ("NBCI").

involvement in the murder of a BGF affiliate, and correctional staff and supervisors at BCDC failed to protect him.   Plaintiff received medical care immediately following the attack. Plaintiff contends that as a consequence of the attack, he has undergone reconstructive surgery and sees a specialist regarding continued problems with his hand.

### B.   Procedural Background

On January 6, 2012, Plaintiff filed a complaint against Defendants BCDC and Warden Gwendolyn Oliver (ECF No. 1), but later amended the complaint, naming as additional defendants Commissioner Wendell France, Assistant Warden Michael Fernandez, and Correctional Officers James Willies and Bola Ayeni.   The complaint alleges a failure to protect claim pursuant to 42 U.S.C. § 1983, premised on individual and supervisory liability. (ECF No. 7).   In the initial complaint, Plaintiff sought as damages $40 million and disability benefits for life.   (ECF No. 1).   Plaintiff filed a supplement to his complaint on February 17, 2012, in which he sought ten million dollars against each Defendant, "in punitive and compensatory damages" and disability for life.   (ECF No. 7, at 3).   Then, on May 2, 2012, Plaintiff filed an amended complaint, in which he purported to explain the bases for his claims against Defendants France, Oliver, and Fernandez.   (ECF No. 22).

Defendants France, Fernandez, and Oliver moved to dismiss or for summary judgment on June 22, 2012. (ECF No. 24). Defendants Willies and Ayeni moved to dismiss or for summary judgment on January 2, 2013. (ECF No. 56).[2] Plaintiff opposed the motions and filed multiple supplements to his opposition and correspondence related to amending his pleadings. (ECF Nos. 31, 32, 33, 34, 43, 54, 55, 58, 64). Defendants France, Fernandez, and Oliver filed a reply brief in support of their motion. (ECF No. 38).

By memorandum opinion and order dated February 26, 2013, the undersigned granted summary judgment, holding that Plaintiff failed to exhaust his administrative remedies as to prior attacks in 2009 and the attack in April 2010. (ECF Nos. 68 & 69). Plaintiff appealed the ruling, and the Fourth Circuit affirmed in part and vacated in part:

> Although it is clear from the record that Toomer did not exhaust his administrative remedies regarding the May and September 2009 attacks and his claim that prison officials failed to comply with the hospital's discharge instructions, we conclude that the district court erred by granting Defendants' motions for summary judgment based on Toomer's failure to exhaust his administrative remedies regarding the April 2010 attack.

---

[2] In their motion, Defendants Willies and Ayeni argued that Plaintiff failed to comply with the Prison Litigation Reform Act, that the court lacked subject matter jurisdiction, and that Plaintiff failed to state a claim upon which relief can be granted. (ECF No. 56).

*Toomer v. BCDC*, 537 F.App'x 204, 206 (4ᵗʰ Cir. 2013).  Thus, the case was remanded to "allow the district court to consider Defendants' alternative grounds for summary judgment and for any further proceedings that may be appropriate." *Id.* at 207.

Subsequently, Plaintiff moved for appointment of counsel (ECF No. 78), which was granted (ECF No. 82).  Pro bono counsel was then appointed.  (ECF No. 83).  On November 21, 2013, Plaintiff's counsel filed correspondence requesting an opportunity to provide supplemental briefing in opposition to Defendants' motions to dismiss or for summary judgment.  (ECF No. 85).  The undersigned approved the request.  (ECF No. 86). Plaintiff filed a supplemental opposition on December 18, 2013 (ECF No. 88), and Defendants submitted a reply brief on January 27, 2014 (ECF No. 90).[3]

## II.  Standard of Review

Defendants' motions will be construed as motions to dismiss.[4]  The purpose of a motion to dismiss under Rule 12(b)(6)

---

[3] In the supplemental opposition to Defendants' motions for summary judgment, Plaintiff informs that he is no longer pursuing claims against BCDC and Correctional Officer Bola Ayeni.  (ECF No. 88, at 2 n.1).  Accordingly, all claims against Defendants BCDC and Ayeni will be dismissed.

[4] The initial memorandum opinion construed Defendants' motions as ones for summary judgment because it was necessary to rely on materials outside the four corners of the complaint in determining whether Plaintiff exhausted his administrative remedies.  The remaining arguments concern the sufficiency of

is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

---

the allegations, however. Consequently, the motions will be treated as ones to dismiss.

at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A. Failure to Protect Claim Against Officer Willies, Commissioner France, Warden Oliver, and Assistant Warden Fernandez

"A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eight Amendment claim brought by a convicted prisoner." *King-Fields v. Leggett*, Civ. Action No. ELH-11-1491, 2014 WL 694969, at *10 (D.Md. Feb. 19, 2014); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). In order to prevail on a claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, [] but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, [] any more than it squares with evolving standards of decency. [] Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the

7

Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).[5]

### 1. Defendant Willies[6]

In his original motion, Defendant Willies argued that "Plaintiff has not pleaded the facts, nor can he, that Defendant[] Willies [] perceived a risk of serious harm to him **before** the attack." (ECF No. 56-1, at 14) (emphasis in

---

[5] Further, to state a failure to protect claim for damages, the inmate must show a serious physical injury. *See De Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). It is undisputed that Plaintiff has pled this element of the claim.

[6] Plaintiff indicated in his initial opposition to Defendants' motion that he sued Defendants in their individual and official capacities. (ECF No. 31, at 10). Any attempt by Plaintiff to seek monetary relief against any of the Defendants in their official capacities for constitutional violations would be barred by Eleventh Amendment immunity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [] As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). States and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 71; *Johnson v. Maynard*, Civ. Action No. ELH-12-2692, 2013 WL 4176958, at *5 (D.Md. Aug. 12, 2013). Accordingly, Plaintiff may only seek monetary relief against Defendants in their personal capacities.

original).    Plaintiff   counters   that   he   sufficiently   alleged
that:

> [Officer] Willies intentionally released an
> inmate from his cell while the prison was on
> lockdown, escorted the inmate from his own
> tier onto Mr. Toomer's tier (where Mr.
> Toomer was held in protective custody),
> opened Mr. Toomer's cell while Mr. Toomer
> slept, granted the inmate access into the
> cell to attack Mr. Toomer, and then escorted
> the inmate back to his own tier and cell.

(ECF No. 88, at 6-7).   In response, Willies argues that mere
negligence is insufficient to show a constitutional violation on
the basis of failure to protect from violence.   (ECF No. 90, at
8).

Willies is correct to point out that negligent failure by a
prison official to protect an inmate from attack by another
inmate is not actionable under the Eighth Amendment.   *See*
*Pressly*, 816 F.2d at 979.   "The Eighth Amendment's deliberate
indifference standard protects an inmate only where it is shown
that prison officials either intended for the inmate to be
harmed or they knowingly disregarded an obvious threat to such
an extent that one can only assume the officials intended the
threat to be carried out."   *Johnson*, 2013 WL 4176958, at *6.   A
prison official is liable under this standard only if he knew
that an inmate faced a substantial risk of serious harm and
disregarded that risk by failing to take reasonable measures to
avoid it.   *See Farmer*, 511 U.S. at 825.

Viewing the allegations in the light most favorable to Plaintiff, he has pled that Officer Willies acted with deliberate or callous indifference, considering the averments that on April 30, 2010, when BCDC was in a state of emergency and on lock down, he escorted another inmate from his own tier to Plaintiff's tier and allowed him access into Mr. Toomer's cell.   A reasonable inference can be drawn that Defendant Willies recognized the substantial risk of harm associated with leading another inmate into Plaintiff's cell, especially considering that the prison was on lock-down during the relevant period and Plaintiff was housed in protective custody due to prior attacks.   The allegations support that Officer Willies disregarded an obvious threat to Plaintiff by allowing another inmate into his cell.

Defendants also suggest that Officer Willies may be entitled to qualified immunity.   The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   If the actions of Defendant Willies occurred in the manner alleged by Plaintiff, qualified immunity

would not apply.[7]   A pretrial detainee's right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established as of the April 2010 attack.   *McFadden v. Allison*, Civ. No. WDQ-08-0154, 2009 WL 3247358, at *5 (D.Md. Oct. 9, 2009) (holding that a pretrial detainee's "rights to be free from prison officials' deliberate indifference to serious medical needs and assaults by other inmates" was "clearly established as of the July 5, 2006 attack.").   Accordingly, the motion to dismiss filed by Defendant Willies will be denied.

---

[7]  The Fourth Circuit recently issued a revised opinion in *Danser v. Stansberry et al.*, No. 13-1828 (4th Cir. Sept. 12, 2014) (*amending Danser v. Stansberry*, --- Fed.App'x ----, 2014 WL 2978541 (4th Cir. July 3, 2014)), vacating the denial of summary judgment in a failure to protect case where the undisputed facts failed to show that the prison official had a "sufficiently culpable state of mind."   The undisputed facts in that case were that a prison official placed plaintiff, a convicted sex offender, in the same recreational cage as a violent gang member, and left the area unsupervised for a period of time in violation of his duties.   The Fourth Circuit held that the prison official was entitled to qualified immunity because "there [was] not evidence in the record that [the prison official] was aware [that plaintiff] was a sex offender, or that [the prison official] was required to check the prison databases in which that information was contained."   *Id.* at *10.

The Fourth Circuit concluded that the prison official was entitled to qualified immunity at the summary judgment stage, however, not on a motion to dismiss.   Moreover, the facts as alleged by Plaintiff that Officer Willies escorted another inmate into Plaintiff's cell during lock down are sufficient – at the motion to dismiss stage - to plead deliberate indifference to a known risk of harm.

   2.   **Defendants France, Fernandez, and Oliver**

Any attempt to hold Warden Oliver, Assistant Warden Fernandez, and Commissioner France personally liable on the basis of failure to protect is unavailing because Plaintiff's allegations do not support that any of these three Defendants knew of a specific threat to Plaintiff's safety and then acted with deliberate indifference to that knowledge.  The allegations in the amended complaint do not state any personal involvement in the April 2010 incident by Defendants France, Fernandez, and Oliver.  Defendants point out that "Plaintiff does *not* [even] assert that Commissioner France knew of and purposely disregarded a known risk of serious harm."  (ECF No. 24-1, at 13).  Indeed, in his amended complaint, Plaintiff contends that on April 30, 2010, Commissioner France "was inside the prison implementing actions to *prevent attacks*, contraband, attacks on staff, etc."  (ECF No. 22, at 1) (emphasis added).  He further avers that Commissioner France "stood directly in front of [his] cell and told [him] he was getting 'on top of' how this happened to [Plaintiff]."  (*Id.*).  Plaintiff believes that "Mr. France was misinformed or not told certain details.  And [thus] participat[ed] in Constitutional violation inadvertently.  He's still wrong."  (ECF No. 31, at 16).  Being unaware of "certain details," however, does not amount to deliberate indifference of a substantial risk of harm.  Similarly, there are no allegations

12

to suggest that Warden Oliver and Assistant Warden Fernandez knew about a specific risk to Plaintiff's safety, which they deliberately disregarded.

Plaintiff's contention that all three Defendants were aware of "rampant corruption of BCDC prison guards and the widespread abuses by prison officials" are insufficient to plead deliberate indifference to a substantial risk of harm *to Plaintiff*, who was already being housed in protective custody to avoid further attacks. *See, e.g., Chavis v. Wolfe*, Civ. Action No. ELH-11-3104, 2012 WL 3610672, at *8 (D.Md. Aug. 22, 2012) ("Plaintiff's general assertions of deficient institutional search procedures and staffing levels similarly provide no grounds to find that the State Defendants acted with deliberate indifference to Chavis's safety."); *Jackson v. Foxwell*, Civ. Action No. RDB-13-2450, 2014 WL 3563609, at *4 (D.Md. July 16, 2014) ("the Court again observed that [plaintiff] has named Governor O'Malley, BCDC Warden Foxwell, Former Secretary Maynard, and Commissioner Ray as Defendants. Nowhere has he demonstrated their personal involvement in the alleged deprivations. There are no allegations that they were personally involved in the day-to-day conditions or care received at BCDC").

Moreover, in *Farmer*, 511 U.S. at 844, the United States Supreme Court concluded that "prison officials who actually knew of a substantial risk to inmate health or safety may be found

13

free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." The Eighth Amendment requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping dangerous [people] in safe custody under humane conditions[.]" *Id.* at 844 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable." *See also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006).

Here, Plaintiff was transferred to protective custody within BCDC following prior attacks on him in 2009. Plaintiff asserts in the amended complaint that following the attack, he initially resisted help from staff after the attack, but Assistant Warden Fernandez persuaded him to receive treatment. (ECF No. 22, at 2); *Smoot*, 436 F.3d at 428 (officer who responds reasonably to danger to inmate not liable under Eighth Amendment, even where further precautions could have been taken but were not); *Young-Bey v. Logston*, Civ. Action No. JFM-11-536, 2012 WL 2402861, at *7 (D.Md. June 22, 2012) ("As soon as plaintiff notified Harbaugh of the attack he was moved from his cell, taken to medical, referred to the psychology department, and an investigation undertaken."). Accordingly, Plaintiff's failure to protect claim against Defendants France, Fernandez, and Oliver, premised on personal liability will be dismissed.

14

**B.   Supervisory Liability**

Plaintiff also appears to base his failure to protect claim against Commissioner France, Warden Oliver, and Assistant Warden Fernandez on supervisory liability.[8]   Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (*citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).   To plead supervisory liability under Section 1983, Plaintiff must allege that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction

---

[8] In his initial opposition to Defendants' motion to dismiss or for summary judgment, Plaintiff indicated that he intended to sue Defendants in their official and individual capacities. (ECF No. 31, at 10).   But "[a] suit based on supervisory liability is an individual capacity suit; i.e., a suit seeking to hold the defendant personally liable."  *Drewry v. Stevenson*, WDQ-09-2340, 2010 WL 93268, at *5 n.6 (D.Md. Jan. 6, 2010) (internal quotation marks omitted).

and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Defendants argue that Plaintiff has not alleged these three elements. Plaintiff disagrees, arguing that "[a]t the least, [Officer] Willies' supervisors should have known of the risk posed to Mr. Toomer." (ECF No. 88, at 9). Plaintiff also requests leave to amend the complaint to include allegations, which he recognizes he "previously raised in other filings with this Court but not by way of a formal amendment to his claims." (*Id.* at 11).[9] He believes that the following allegations establish supervisory liability as to Defendants France, Fernandez, and Oliver:

> (1) Defendants Oliver and Fernandez were aware of the prior attempts on Mr. Toomer's life by BGF gang members and of the continued threats on his life;
>
> (2) BCDC was severely understaffed in 2009 and 2010. As a result, less qualified prison guards were hired to oversee the inmates. Many of these new guards were corrupted by BGF and were, in essence,

---

[9] Plaintiff has filed multiple amendments and supplements to his complaint throughout the course of this litigation. In the February 26, 2013 memorandum opinion, it was noted that Plaintiff's motion for leave to file an amended complaint (ECF No. 64) "shall be denied to the extent it raises new claims regarding denial of medical care. . . . To the extent the [m]otion to [a]mend is responsive to Defendants' dispositive motions it *has been considered by the court*." (ECF No. 68, at 1 n.1) (emphasis added). Plaintiff's counsel requests leave to amend the complaint to reassert the same allegations that are already on the record by way of formal amendment; this is unnecessary.

> working for the gang.   This was well known
> to Defendants France, Oliver, and Fernandez.
>
> (3) Defendants France, Oliver, and Fernandez
> failed to stop rampant corruption of BCDC
> prison guards and the widespread abuses by
> prison officials and BGF gang members.
> These failures led to the attack on Mr.
> Toomer.

(*Id.*).

These allegations do not help Plaintiff's failure to protect claim against Defendants Oliver, France, and Fernandez for supervisory liability.   In the context of a failure to protect claim premised on supervisory liability, Plaintiff "assumes a heavy burden of proof," as he "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Slakan*, 737 F.2d at 373.   Generally, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents."   *Id.*   But, "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates."   *Id.* (citations omitted).

Plaintiff has not alleged an "affirmative link" between inaction by the three supervisory Defendants and the purported constitutional violation committed by Officer Willies, their subordinate. Even crediting Plaintiff's allegations that "many of these new guards" were corrupted by BGF and that Defendants Oliver, France, and Fernandez were aware of this reality at BCDC, such allegations do not establish that the three Defendants knew that Officer Willies was engaged in conduct that posed a pervasive risk of constitutional injury to Mr. Toomer. Plaintiff asserts that "[a]s a result of the failure of Defendants Oliver, France, and Fernandez to clean up operations in the face of known, widespread corruption at BCDC and because of their failure properly to place and supervise trained subordinate officers, Mr. Toomer was attacked and almost killed." (ECF No. 88, at 8). But "administrative responsibilities are insufficient to confer supervisory culpability." *Anderson v. Warden*, Civ. Action No. PWG-14-216, 2014 WL 2916882, at *3 (D.Md. June 25, 2014)).

The analysis undertaken by Judge Motz in *Young-Bey*, 2012 WL 2402861, at *5, applies here:

> Plaintiff points to the attack upon him, the attacker's possession of a homemade weapon, and the attacker having been involved in prior altercations with other inmates, in an attempt to demonstrate a pattern of indifference. Plaintiff cannot satisfy the burden under *Slakan* "by pointing to a single

> incident or isolated incidents," as he does
> here. [] Unfortunately, it is impossible to
> provide a violence free climate in prison.
> Incidents of assault occur within the
> confines of such volatile settings. *The*
> *plaintiff has failed to establish that there*
> *was information such as to place a*
> *reasonable person on notice that he would be*
> *assaulted or that extra security precautions*
> *were necessary to safeguard his well-being.*
> . . . Plaintiff has pointed to no action or
> inaction on the part of Shearing, Campbell,
> Cassidy, and Keith Arnold that resulted in a
> constitutional injury.

(emphasis added).   None of the allegations indicate that the
Warden, Assistant Warden, or the Commissioner were aware that
Officer Willies would assist another inmate in attacking Mr.
Toomer or that they were privy to information suggesting that
any *additional* precautions were needed to safeguard Mr. Toomer,
especially considering that he was already housed in protective
custody in response to prior attacks on his person.   Based on
the foregoing, the claims against Defendants France, Fernandez,
and Oliver will be dismissed.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by
Defendants France, Fernandez, and Oliver will be granted.   The
motion to dismiss filed by Defendant Willies will be denied.   A
separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

19