IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK TOOMER                             *
                                                           *
v.                                                 *    Civil No. JKS 12-83
                                                           *
OFFICER JAMES WILLIES             *
                                                           *

**MEMORANDUM OPINION**

This case was referred to me, with the consent of the parties, for all further proceedings. ECF No. 101. Presently pending is Defendant's Motion for Summary Judgment. ECF No. 120. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Defendant's motion will be denied.

**1. Background.**

The following facts are taken in the light most favorable to Plaintiff, the non-moving party. Plaintiff Derrick Toomer is a former pre-trial detainee at the Baltimore City Detention Center (BCDC) who was attacked by another inmate, Todd Holloway, while housed in protective custody. Plaintiff asserts that Defendant, Officer James Willies, facilitated this assault by allowing Holloway to gain access to Plaintiff's cell.

The assault occurred on April 30, 2010, while Defendant was serving as a correctional officer (CO) on B Tier, the protective custody unit.[1] ECF No. 121-3 at 8. Plaintiff was housed on the east side of B Tier and Holloway was housed on the west side of B Tier. ECF No. 121-2 at 11. Travel from the east to the west side of the tier requires passage through a security gate separating the east side from the main corridor and another security gate separating the main corridor from the west side. *Id.*; ECF No. 121-4 at 6.

---

[1] Plaintiff was placed in protective custody because he had been attacked by other inmates on two occasions prior to the April 2010 incident. ECF No. 121-1 at 9. Plaintiff asserts that he was under constant threats from gang members during the time of his incarceration. *Id.*

Shortly after 3:00 p.m., Defendant let Holloway out of his cell, allegedly to address a foul smell resulting from his flooded toilet. ECF No. 121-2 at 11. In violation of established BCDC policy, Defendant did not handcuff or search Holloway when he removed him from his cell. ECF No. 121-3 at 11-12. Defendant and Holloway then walked from the west side of B tier into the corridor area. ECF No. 121-2 at 11. Defendant claims that he checked the utility closet for sanitizer to no avail, and then, at Holloway's suggestion, checked the roster of inmates to see who might have cleaning supplies in his cell. ECF No. 120-2 at 19-20; ECF No. 121-3 at 10. Defendant claims that he determined that Plaintiff might have a jug of sanitizer and yelled down to Plaintiff's cell to ask. ECF No. 121-3 at 10. Defendant, with Holloway at his side, claims that he heard "yes" in response, and then opened Plaintiff's cell from the lock box. *Id.* At this point, Holloway ran past Defendant, down the corridor and into Plaintiff's cell. *Id.* Plaintiff, in contrast, claims that he neither heard nor responded to Defendant's inquiry regarding sanitizer, and was in fact asleep in his cell. He awoke to find Holloway standing over him with a knife. ECF No. 121-5 at 3, 4. Holloway stabbed Plaintiff multiple times in the face, arms, and hands. *Id.* Defendant claimed that he tried to call for help during the attack but his radio was out of batteries. ECF No. 121-3 at 10-11.

Following the attack on Plaintiff, Captain Ron Jones of the BCDC internal investigation unit investigated potential disciplinary action against Defendant. Captain Jones testified that the protective custody unit is on lockdown at all times. ECF No. 121-2 at 8. COs are required (1) to place an inmate in handcuffs if an emergency forces a CO to remove the inmate from his cell, *id.* at 5, (2) to search an inmate before the inmate enters or exits a protective custody tier, *id.*, (3) to forbid inmates from crossing from the east side to the west side of the tier, *id.*, (4) to never unlock a protective custody inmate's cell while another inmate is moving freely on the tier, *id.* at 6, and

(5) to call a supervisor if an inmate floods his toilet when the prison is on lockdown. *Id.* at 15. Captain Jones concluded that Defendant violated BCDC policies when he removed Holloway from his cell without handcuffs, failed to search Holloway upon removing him from his cell, permitted Holloway to move from the west side to the east side of B Tier, and opened Plaintiff's cell while Holloway was moving freely on the tier. ECF No. 121-2 at 14-16.

Captain Jones also concluded that Defendant's account of the incident conflicted with the accounts of other witnesses. *Id.* at 15. For example, Defendant claims that he went to receiving to seek assistance following the assault, ECF No. 120-1 at 4, but the correctional officer working at the receiving post at the time of the incident reported that this did not happen. ECF No. 121-2 at 14-15. Moreover, Officer Tierra Moore, in charge of B tier, testified that Defendant was at his desk when she entered B Tier and that Defendant said nothing to her about the attack on Plaintiff, ECF No. 121-4 at 8, 10; she only discovered that the assault occurred after overhearing Defendant and Holloway discussing it. *Id.* at 9. She then proceeded to the east side of the tier and found Plaintiff slumped over and bleeding. *Id.* at 10-11.

On January 6, 2012, Plaintiff filed a complaint alleging a failure to protect claim pursuant to Section 1983 of Title 42 of the United States Code against BCDC and Warden Gwendolyn Oliver. ECF No. 1; ECF No. 93 at 3. Plaintiff later amended the complaint to add Commissioner Wendell France, Assistant Warden Michael Fernandez, and Correctional Officers James Willies and Bola Ayeni. On September 18, 2014, the court dismissed Plaintiff's claims against BCDC, Ayeni, France, Fernandez and Oliver, but denied the motion to dismiss as to Defendant Willies. ECF Nos. 93, 94. The court concluded that, viewing the allegations in the light most favorable to Plaintiff,

> he has pled that Officer Willies acted with deliberate or callous indifference, considering the averments that on April 30, 2010, when BCDC was in a state of

> emergency and on lock down, he escorted another inmate from his own tier to Plaintiff's tier and allowed him access into Mr. Toomer's cell. A reasonable inference can be drawn that Defendant Willies recognized the substantial risk of harm associated with leading another inmate into Plaintiff's cell, especially considering that the prison was on lock-down during the relevant period and Plaintiff was housed in protective custody due to prior attacks. The allegations support that Officer Willies disregarded an obvious threat to Plaintiff by allowing another inmate into his cell.

ECF No. 93 at 10. With regard to Defendant's qualified immunity defense, the court concluded that qualified immunity would not apply because "[a] pretrial detainee's right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established as of the April 2010 attack." *Id.* at 10-11 (citing *McFadden v. Allison*, Civ. No. WDQ-08-0154, 2009 WL 3247358, at *5 (D. Md. Oct. 9, 2009)).

## 2. **Standard of Review.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 343, 347 (1986). "For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation." *Nero v. Baltimore Cnty., MD*, 512 F. Supp. 2d 407, 409 (D. Md. 2007) (citing *Anderson*, 477 U.S. at 248). "Summary judgment is also appropriate when a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49.

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 518 (D. Md. 2007) (citing Fed. R. Civ. P. 56(e)). "The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Id.* at 518-19 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 519 (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**3. Discussion.**

Defendant argues that he is entitled to summary judgment because (1) while he may have acted negligently in failing to prevent the assault, mere negligence is insufficient to constitute a violation of the Eighth Amendment; and (2) he is protected by qualified immunity. ECF No. 120-1 at 18, 20. Plaintiff responds that Defendant (1) acted with deliberate indifference to his safety, and (2) is not entitled to qualified immunity because he violated Plaintiff's right to reasonable safety while in government control. ECF No. 121 at 9, 14.

**A. Failure to Protect.**

Section 1983 establishes a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Section 1983 "'is not itself a source of

substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Pretrial detainees, such as Plaintiff, "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). A failure to protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eighth Amendment claim brought by a convicted prisoner. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

Prison officials are obligated to take reasonable measures to guarantee inmate safety. *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). "'In particular, . . . prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective. . . ." *Farmer*, 511 U.S. at 833 (citations and quotation marks omitted). A prison official violates an inmate's federal rights when two requirements are met. First, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. at 834. For a claim based on a failure to prevent harm, the plaintiff must show that he was subjected to "conditions posing a substantial risk of serious harm." *Id.* Second, the prison official must have a "sufficiently culpable state of mind" to be held liable. In a prison-condition case such as this one, the relevant state of mind is one of "'deliberate indifference' to inmate health or safety. *Id.*

### 1. Objectively Substantial Risk of Harm.

"The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013). Here, it is virtually undisputed that Defendant violated several policies designed to prevent a substantial risk of serious harm. BCDC's policy dictates that a CO must handcuff and search an inmate who leaves his cell on the protective custody tier, should not allow an inmate to cross from the east to the west side of the tier, and should not unlock a protective custody inmate's cell while another inmate is moving freely on the tier. These violations exposed Plaintiff to a substantial risk of serious harm, a risk that was realized when Plaintiff was attacked. Plaintiff has established a triable issue of fact as to this element.

### 2. Deliberate Indifference.

Plaintiff also must demonstrate that Defendant acted with deliberate indifference to his health or safety. In *Farmer*, the Supreme Court explained that deliberate indifference entails "more than ordinary lack of due care for the prisoner's interests or safety," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." 511 U.S. at 835. "The Court held that deliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). "Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105. This is because even a subjective standard may be proven with circumstantial evidence:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

>from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious.

*Farmer*, 511 U.S. at 842 (citations omitted). "In other words, although the obviousness of a particular injury is not conclusive of an official's awareness of the injury, . . . an injury might be so obvious that the factfinder could conclude that the guard *did* know of it because he could not have failed to know of it." *Brice*, 58 F.3d at 105 (citations omitted).

The Fourth Circuit underscored *Farmer's* holding that deliberate indifference may be proven by circumstantial evidence in *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Makdessi brought suit against various prison officials alleging violations of the Eighth Amendment because his cellmate, a gang leader, beat and raped him on several occasions. Makdessi had previously complained to prison officials of such conduct. *Id.* at 129-30. The district court concluded that Makdessi failed to meet the subjective standard for deliberate indifference, but the Fourth Circuit reversed, concluding that "actual knowledge can be shown by circumstantial evidence that the risk was so obvious that the [d]efendants had to know it." *Id.* Whereas the district court focused on the lack of advance notice, the Fourth Circuit emphasized that "the failure to give advance notice is not dispositive if it can be shown that the circumstances made it reasonable to believe that the [d]efendants were aware of a serious risk to the plaintiff but took no protective action." *Id* at 135. The district court had "failed to appreciate that the subjective actual knowledge standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known." *Id.* at 136. Thus, "even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify 'underlying facts that he strongly suspected to be true,'" or that he "'declined to confirm

inferences of risk that he strongly suspected to exist.'" *Brice*, 58 F.3d at 105 (quoting *Farmer*, 511 U.S. at 843 n.8).

Similarly, in *McFadden v. Allison*, Civ. No. WDQ 08-154, 2009 WL 3247358 (D. Md. Oct. 9, 2009), McFadden alleged that while he was in pretrial custody on the O Tier at BCDC, CO Allison opened his cell and allowed a group of inmates to assault him. *Id.* at *1. Kenneth Bartee, Chief of Security, testified that Allison was one of three officers who could have opened McFadden's cell and that a group of inmates should not have had access to the bottom level of the O Tier during Allison's shift. *Id.* at *2. He also testified that the only way such inmates could have gained access was if the entrance to the tier was not secured or if a CO breached the security protocol. *Id.* The court concluded that these were "facts from which a reasonable jury could infer that Allison 'sadistically and maliciously' directed the attack against McFadden." *Id.* at 4. "These facts would also permit a reasonable jury to conclude that she subjectively recognized that McFadden was at risk of harm and that he would need medical attention after the attack." *Id.* Thus, the court denied Allison's motion for summary judgment.

Defendant places heavy reliance on *Rich v. Bruce*, 129 F.3d 336 (4th Cir. 1997), where prison inmate Rich was attacked by another inmate, Higgins. *Id.* at 336-38. CO Bruce had removed Rich from his cell and placed him in an outdoor recreation area, then removed Higgins from his cell and placed him in an indoor recreation area, despite the fact that prison regulations prohibited the removal of more than one inmate at a time for recreation. *Id* at 337. While Bruce was returning Rich to his cell, another prison official, presumably because of a misunderstanding, opened the door to the indoor recreation area, and Higgins escaped and attacked Rich. *Id.* The evidence showed (1) that Bruce was aware that Higgins posed a substantial risk to every inmate in the prison and especially to Rich, who previously had stabbed Higgins; (2) that Bruce recognized

the general risk that inmates posed to one another in that particular prison; and (3) that Bruce deliberately violated regulations intended to prevent exactly the kind of inmate-on-inmate violence that actually occurred. These facts were insufficient to justify a finding of deliberate indifference, however, because the evidence did not show that Bruce recognized the *unique* risks created by his actions in the case:

> These findings establish that Bruce knew, as a general matter, that Rich was at risk from other inmates, and from Higgins in particular, and that Bruce knew that his actions were in violation of [prison] regulations. They do not establish, however, that Bruce had actual knowledge that his actions uniquely increased these general risks to which Rich was exposed each and every day he was incarcerated in disciplinary segregation at [the prison]. That is, the findings do not establish that Bruce knew that his actions exposed Rich to a specific risk distinct from the general risks of violence from other inmates and Higgins to which Rich was always exposed, and of which Bruce was most certainly aware.

*Id.* at 339.

In contrast, in this case, a factfinder could conclude that Defendant knew that his actions *uniquely increased* the general risks to which Plaintiff was exposed on a daily basis. In *Rich*, the exposure to harm occurred during a routine transfer and was caused in part by a misunderstanding with another CO. There was no evidence from which to infer that Bruce's actions went beyond mere negligence. Here, Defendant himself deliberately committed every act that allowed Holloway to attack Plaintiff. He intentionally opened Plaintiff's protective custody cell with full knowledge that the unrestrained Holloway would thereby be able to access it. He thus exposed Plaintiff to a specific and unique risk that is distinct from the general risk of prison violence.

Under these circumstances, Defendant's claims that he merely "made a mistake," that Holloway "played him out of position," that Holloway "had an agenda," that his "inexperience . . . probably played a big part" in allowing the assault to occur, ECF No. 120-3 at 21, and that he was only "six months on the job, 21 years old [and] hadn't worked that post before," ECF No. 120-1 at

10

17, are not dispositive. Defendant cannot "simply bury [his head] in the sand and thereby skirt liability." *Makdessi*, 789 F.3d at 133; *see also Lemire*, 726 F.3d at 1078 (concluding that a jury could find that defendants were aware of the risks posed by withdrawing all floor officers from a building with mentally ill inmates because the risks were obvious).

Taking the facts in the light most favorable to Plaintiff, he has created a genuine issue of fact as to whether Defendant acted with deliberate indifference by escorting another inmate to Plaintiff's protective custody tier without searching or handcuffing the other inmate, and then opening Plaintiff's protective custody cell. A factfinder could conclude that Defendant was aware of the substantial risk posed from these policy violations and/or from the very fact that the risk was obvious. Accordingly, summary judgment will be denied.

### B. Qualified Immunity.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Danser v. Stansberry*, 772 F.3d at 340, 345 (4th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official asserting the defense of qualified immunity bears the burden of proof with respect to that defense." 772 F.3d at 345 (citing *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013)). The qualified immunity analysis involves a two step approach. First, a court must determine whether the government official violated a constitutional right held by the plaintiff, and second, a court must decide whether that constitutional right was "clearly

established" at the time of the events in question.  772 F.3d at 346; *Iko v. Shreve*, 535 F.3d 225, 237 (4th Cir. 2008).

### 1. Constitutional Right.

The constitutional right at issue is Plaintiff's "due process right to be protected from violence committed by other prisoners."  *Danser*, 772 F.3d at 346; *Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.").  A claim of this nature requires proof of two elements.  First, the plaintiff must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."  *Id.*  Here, there is no question that Plaintiff was stabbed and that his injuries were significant.  *See, e.g., Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003); *Case v. Ahitow*, 301 F.3d 605, 606 (7th Cir. 2002) (serious physical injuries received in violent assault by fellow inmate were sufficiently serious under Eighth Amendment).

The second element requires that the plaintiff show that the prison official allegedly violating his constitutional rights had a "sufficiently culpable state of mind."  772 F.3d at 346.  In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety."  *Id.* at 347.

The court has already found that Plaintiff has produced evidence which would support a finding of deliberate indifference to his health or safety.  A similar analysis in the qualified immunity context leads to the same result.  The Fourth Circuit denied qualified immunity on facts not distinguishable here in *Strickland v. Halsey*, __ Fed. Appx. __, No. 14-6229, 2015 WL 4928270 (4th Cir. Aug. 19, 2015).  There, inmate Gleason murdered inmate Cooper at a maximum security prison in Virginia.  Gleason was serving a life sentence for murder, and had previously strangled his cellmate to death.  During a court appearance for this second murder,

Gleason declared that he would kill again if he were not executed. Gleason was sent to a new maximum security prison, where he settled on Cooper as his new target. Gleason claimed that he convinced Cooper to fake being strangled by Gleason in order to sue the prison. Gleason obtained a long braided rope and claimed that two COs, Meade and Mullins, purposefully performed an insufficient pre-recreation search. Gleason then secured a cage next to Cooper's in the yard and strangled him to death.

Cooper's estate sued, and the Fourth Circuit reversed the grant of summary judgment in favor of Meade and Mullins. As stated by the Court, "taking the facts in the light most favorable to Strickland [the administrator of Cooper's estate], we conclude that failing to adequately strip-search Gleason for the murder weapon, pursuant to a pre-arranged agreement, does constitute deliberate indifference." *Id.* at *5. The court noted evidence showing that a network of favor-trading existed between guards and inmates at the prison. "Specifically, Gleason states that there were two discrete instances of favor-trading that facilitating [sic] his murder of Cooper: (1) arranging with Meade and Halsey the placement of inmates on the recreation yard such that Gleason was next to Cooper, and (2) agreeing with Meade and Mullins to be insufficiently searched prior to entering the recreation yard." *Id.* at *6. While the recreation placement did not rise to the level of deliberate indifference, the Court was troubled by evidence showing that Meade and Mullins, pursuant to an agreement, intentionally permitted Gleason to bring contraband into the yard. This evidence would allow a reasonable factfinder to conclude that Meade and Mullins subjectively knew that there was a substantial risk of serious harm to Cooper and other inmates. *Id.* Unlike in *Strickland*, here there is no evidence of an agreement between Defendant and Holloway, although Holloway's deposition testimony allows for that possibility. ECF No. 121-7 at 3. Regardless, Defendant's decision to intentionally remove all protective

barriers between Plaintiff and Holloway is substantially equivalent to the conduct exhibited by Defendants in *Strickland*. Here, a definitive agreement between Defendant and Holloway is not necessary. Intentionally permitting an unrestrained inmate access to a protective custody cell would allow a factfinder to conclude that Defendant subjectively knew that there was a substantial risk of serious harm to Plaintiff.

Defendant's reliance on *Danser v. Stansberry*, 772 F.3d 340 (4th Cir. 2014), for his qualified immunity defense is misplaced. There, prison official Boyd left an enclosed recreation space unsupervised for several minutes, during which Danser was attacked by another inmate, Scott Gustin, in large part because of Danser's status as a sex offender. *Id.* at 344. The Court reasoned that "[t]he mere fact that Danser and Gustin each had separation orders with respect to other inmates does not show that Boyd would have appreciated the risk posed by putting Danser and Gustin in the same recreation cage." *Id.* at 348. With regard to Boyd's act of leaving the recreation area unsupervised, the court noted that

> it is undisputed that this act was a violation of Boyd's responsibilities. However, there is no evidence in the record showing that this dereliction of duty constituted anything other than negligence. Because the record lacks any evidence that Boyd knew that Gustin posed a particular danger to Danser, the record as a matter of law fails to show that Boyd must have appreciated that his act of leaving Danser and Gustin together in an unsupervised area created an excessive risk to Danser's safety on that basis. Accordingly, although Boyd may well have been negligent in his actions, the evidence on which Danser relies fails to show that Boyd acted with deliberate indifference.

The argument that the risk of placing Danser in an unsupervised recreation cage with Gustin was "obvious" failed because there was no evidence that Boyd knew of Danser's sex offender status.

Here, in contrast, Defendant knew that Plaintiff was in protective custody and knew that he was providing Holloway with unauthorized access to Plaintiff's cell without any precautions or restraints in place. Moreover, unlike in *Danser*, where the close proximity of the inmates was justified by the penological interest in providing inmates with recreation time, here there was no penological justification for allowing Holloway close proximity to Plaintiff. *See Lemire*, 726 F.3d at 1079 (denying summary judgment in part because "Plaintiffs presented sufficient evidence for a jury to conclude that there was no reasonable justification for the decision to withdraw all floor officers from Building 8 for over three hours without putting in place any plan to ensure inmate safety").

A plaintiff establishes "deliberate indifference" by showing that a prison official "knew of and disregarded an excessive risk to inmate health or safety." *Danser*, 772 F.3d at 347. Defendant has failed to meet his burden of showing that Plaintiff cannot establish the required deliberate indifference.

### 2. Clearly Established.

"Officials' actions violate a 'clearly established' constitutional right only if, 'in the light of preexisting law, the unlawfulness' of the actions is apparent." *Iko v. Shreve*, 535 F.3d 225, 237-38 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Id.* at 238 (citations and quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). "In the end, the lodestar for whether a right was clearly established is whether the law gave the officials

'fair warning' that their conduct was unconstitutional." *Iko*, 535 F.3d at 238 (citations and quotation marks omitted).

In denying Defendant's motion to dismiss, Judge Chasanow concluded that "[a] pretrial detainee's right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established as of the April 2010 attack." ECF No. 93 at 10-11.  Indeed, in *Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997), the Court affirmed that "[a]t the time these events occurred in 1993, it was clear that as a component of their duty to provide inmates with humane conditions of confinement, prison officials were required to take reasonable measures to guarantee the safety of the inmates." *Id.* at 531 (citations omitted).  "Further, it was well established that encompassed within that duty was a requirement that prison officials take reasonable steps to protect prisoners from violence at the hands of other prisoners." *Id.*

In *Odom v. S. Carolina Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003), the Court considered "whether it was clearly established in June 2000 that the defendants' failure to act in response to Odom's requests to be removed from the cage adjacent to his attackers constituted deliberate indifference to Odom's Eighth Amendment rights under the circumstances."  The court, in determining that it was indeed clearly established, explained:

> In June 2000, it was clearly established in this circuit that correctional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth Amendment if the officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely. *See Winfield*, 106 F.3d at 531-32.  By the same token, we had also determined, well before the time of this attack, that a correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the rights of the victim inmate. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir.1978). *Gordon* does not suggest whether the officers knew about the potential violence before the attack or whether they were merely present when the fight broke out; nevertheless, the plaintiff stated a viable claim as a result of the officers' failure to take any action whatsoever.

The *Odom* Court concluded that, "at the time of the attack on Odom, the state of pre-existing law was such that reasonable prison guards in the defendants' position would have understood that doing nothing in response to Odom's requests in light of the circumstances of this case violated Odom's rights." *Id.* at 773-74.

Here, viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, not only did Defendant do nothing to prevent or respond to Holloway's assault, but in fact took affirmative actions which allowed it to occur. A reasonable prison official would have understood that granting Holloway unrestricted access to Plaintiff's cell, particularly without searching him, violated a clearly established right of Plaintiff's. Defendant is not entitled to qualified immunity.

**4. Conclusion.**

The Court will deny Defendant's motion for summary judgment.[2]

Date: December 18, 2015                                                                /S/
                                                                      Jillyn K. Schulze
                                                                      United States Magistrate Judge

---

[2] Plaintiff recently filed a Motion to Strike Defendant's Reply Brief, ECF No. 125, arguing that the court should not consider the reply because the court never granted Defendant's motion to extend the deadline to file a reply. The court notes that Plaintiff never filed an opposition to Defendant's motion to extend, nor does he now assert prejudice because of the delayed filing. Plaintiff also contends that *Rich v. Bruce*, 129 F.3d 336 (4th Cir. 1997) "was not cited by Defendant previously." ECF No. 125 at 2. Defendant did in fact cite *Rich* in his original motion, *see* ECF No. 120-1 at 16, although the court recognizes that the citation involved a one-sentence explanation, whereas the reply brief spends five pages comparing the facts of this case to the facts in *Rich*. Plaintiff requests leave to file a sur-reply to fully address the new arguments contained in the reply. Because the court is denying Defendant's motion for summary judgment, this issue is moot. Plaintiff's Motion to Strike is denied.